UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| OWENS CORNING CANADA HOLDINGS ULC, as successor-in-interest to OWENS CORNING COMPONENT HOLDINGS ULC,<br><br>     Plaintiff,<br><br>    v.<br><br>QRD, LLC,<br><br>     Defendant. | No. __ Civ. ____<br><br>**COMPLAINT**<br><br>**ECF CASE** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

  Plaintiff Owens Corning Canada Holdings ULC ("Owens Corning"), as successor-in-interest to Owens Corning Component Holdings ULC ("OCCH"), by its undersigned counsel Covington & Burling LLP, files this Complaint against Defendant QRD, LLC ("QRD"), in its capacity as the designated seller representative of QC VIII Luxembourg S.à.r.l., Quad-C Principals Cayman, L.P., 0980332 B.C. Ltd., 0980334 B.C. Ltd., 0980338 B.C. Ltd., Eduardo Lozano, Robert A. Milne, Baldev S. Shokar, and certain option holders (collectively with QRD, "Sellers"), and alleges as follows:

## NATURE OF THE ACTION

  1.  This lawsuit is the result of Sellers' improper refusal to indemnify Owens Corning against any and all losses resulting from Sellers' breach of certain representations and warranties they made to Plaintiff under the parties' Securities Purchase Agreement (the "SPA"), dated February 19, 2016.

  2.  Pursuant to the SPA, OCCH acquired InterWrap Holdings Inc. ("InterWrap"), including its wholly-owned subsidiary International Packaging Products Private Limited ("IPP"),

a manufacturer of specialty plastics roofing and other construction products based in India, from Sellers. The SPA included broad representations and warranties by Sellers concerning certain "Tax Matters," including but not limited to Sellers' payment of all pre-closing taxes and the completeness and accuracy of InterWrap's and its subsidiaries' tax filings.

3. Owens Corning learned that Sellers had breached those representations and warranties after the Indian Directorate of Revenue Intelligence ("DRI") in early 2017 launched an audit investigation into InterWrap's pre-closing procurement of certain tax relief under an Indian export incentive program known as the Focus Product Scheme ("FPS"). On or about April 9, 2018, DRI abruptly demanded the immediate disgorgement by IPP of millions of dollars of tax relief obtained by InterWrap through the FPS in 2014-15.

4. DRI pressured IPP and Owens Corning by threatening immediate sanctions against IPP, including possible shutdown of its operations and arrest of its senior employees. Faced with these threats, in May 2018 Owens Corning was forced to pay, under protest, approximately US$1.38 million, representing half of DRI's initial interim demand. Owens Corning is continuing to defend against the DRI proceeding, but is at risk of millions of dollars of potential additional liability as a result of Sellers' breaches.

5. Owens Corning promptly notified Defendant, as Seller Representative, concerning DRI's investigation and its April 2018 payment demand, and sought indemnification by Sellers under the SPA and the parties' related Escrow Agreement (collectively, the "Agreements"). Under the Agreements, $17.0 million (the "Escrow Funds") was deposited in a Special Escrow Account for a three-year period from the closing, for the express purpose of indemnifying the parties against such breaches.

6. Defendant, however, has flatly refused to honor Sellers' unambiguous obligations under the Agreements and to acknowledge Owens Corning's right to indemnification from the Escrow Funds. Instead, Defendant has flouted the plain language of the SPA by falsely claiming that the "Tax Matters" provisions of the SPA do not apply—even though the SPA expressly defines as tax refunds all monies received by InterWrap in connection with the FPS and addresses the disposition of such refunds as "Tax Matters."

7. Owens Corning now brings this action to hold Sellers—through Defendant as their designated Seller Representative—to their contractual promises. Owens Corning seeks a declaratory judgment stating that Owens Corning is entitled to indemnification from the Escrow Funds for any and all liabilities arising from the DRI's investigation into Sellers' pre-closing conduct relating to the FPS. Further, Owens Corning seeks compensatory damages for Defendant's and Sellers' breaches of their obligations under the Agreements and an award of attorney's fees and costs in bringing this action, as provided under the SPA.

## THE PARTIES

8. Plaintiff Owens Corning Canada Holdings ULC is a corporation organized under the laws of the Province of British Columbia, Canada, with its principal place of business in British Columbia. As the result of a corporate amalgamation with OCCH after the date of the SPA, Plaintiff Owens Corning is the successor of all rights, titles, and interests of OCCH, including without limitation all rights under the Agreements.

9. Defendant QRD, LLC is a limited liability company organized under the laws of the State of Delaware, with its registered agent located in Delaware. Under Section 10.16 of the SPA, Sellers appointed QRD as the Seller Representative to serve as Sellers' exclusive agent and attorney-in-fact, with power and authority, *inter alia*, to receive and respond to claims for

indemnification under the Agreements, and to defend and litigate on Sellers' behalf any action on such claims brought by Owens Corning.

## JURISDICTION AND VENUE

10. This Court has personal jurisdiction over the Defendant in this action based upon the forum selection clause contained in Section 10.9 of the SPA, under which all parties, including Defendant, submitted to the exclusive jurisdiction of the courts located within the State of New York for any and all disputes arising from the SPA. Moreover, all parties to the SPA, including Defendant, expressly waived any basis for contending, and agreed *not* to assert in any such court, that any party to the SPA, including Defendant, is not personally subject to the jurisdiction of such courts. *Id.* Moreover, a substantial part of the events giving rise to the claims in this action, including the negotiating and drafting of the relevant agreements and the closing of the transaction, occurred in New York.

11. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332, in that complete diversity of citizenship exists between Plaintiff and Defendant. Specifically, Plaintiff is a citizen of British Columbia, Canada, and Defendant is a citizen of Delaware.

12. The amount in controversy in this action exceeds US$75,000, exclusive of interest and costs.

13. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims in this action, including the negotiating and drafting of the relevant agreements and the closing of the transaction, occurred in New York. Moreover, under the forum selection clause of the SPA, all parties including Defendant expressly waived any basis for contending, and agreed *not* to assert, that this court is an inconvenient forum for any action arising from a dispute under the SPA. SPA § 10.9.

## FACTS

14. Prior to April 1, 2016, Sellers were the owners and stockholders of InterWrap. IPP was a wholly-owned subsidiary of InterWrap. Based in India, IPP manufactures roofing products and steel and lumber wraps made from polypropylene and polyethylene woven fabrics.

15. Owens Corning Canada Holdings ULC, referred to herein as "Owens Corning," is a wholly-owned subsidiary of Owens Corning, a worldwide leader in the development, manufacture, and marketing of insulation, roofing, and fiberglass composites. OCCH is an acquisition entity established for the purpose of acquiring InterWrap. Pursuant to a corporate amalgamation with OCCH, Owens Corning Canada Holdings ULC succeeded to all rights, titles, and interests of OCCH, including without limitation all rights under the Agreements.

16. On or about February 19, 2016, OCCH and Sellers, including QRD in its capacity as Seller Representative, executed the SPA, by which OCCH agreed to purchase InterWrap, including IPP, subject to various pre-closing conditions.

17. Pursuant to Section 2.3(g) of the SPA, and as part of the consideration for the acquisition, OCCH agreed to deposit US$3.375 million into a "General Escrow Account," and an additional US$17 million, referred to herein as the "Escrow Funds," into a "Special Escrow Account," for the purpose of securing the indemnification obligations set forth in Section 9.3 of the SPA. The funds in the General Escrow Account have been released and are not at issue in this action.

18. In particular, the Escrow Funds shall be available, for a period of three years from the closing date, to indemnify Owens Corning for, *inter alia*, all losses arising from any breaches by Sellers of the representations and warranties concerning "Tax Matters" set forth in Section 4.11 of the SPA. Escrow Agreement, § 1.1; SPA § 9.5(d).

19.     The transaction closed on or about April 21, 2016. In conjunction with the closing, OCCH, QRD, and Wilmington Trust, N.A., as Escrow Agent, executed the Escrow Agreement, dated as of April 21, 2016.

**Sellers' Representations and Warranties Under the SPA**

20.     Under Section 4.11, Sellers made numerous representations and warranties with respect to "Tax Matters." As defined in the SPA, the term "Tax Matter" means "any audit, examination, contest, assessment, notice of Tax deficiency, claim for refund, administrative or judicial proceedings, or other adjustment of Taxes of or relating to any Tax" of InterWrap or its subsidiaries, including IPP. *Id.* § 1.1. Further, "Tax" or "Taxes" are defined, in relevant part, to include:

> all taxes, assessments, charges, duties, fees, levies or other governmental charges including all Canadian, United States or other jurisdiction's federal, provincial, state, local, foreign and other income, franchise, profits, capital gains, capital stock, gross receipts, transfer, sales, use, value added, occupation, property, excise, severance, windfall profits, stamp, license, payroll, withholding and other taxes, assessments, charges, duties, fees, levies or other governmental charges of any kind whatsoever (whether payable directly or by withholding), all estimated taxes, deficiency assessments, additions to tax, penalties and interest . . .
> *Id.*

21.     Specifically, Sellers represented and warranted to Plaintiff that InterWrap, including IPP, had filed or caused to be filed "all material returns, statements, forms and reports (each, a 'Return')" that were required to be filed prior to closing, and that "[a]ll such Returns are complete and accurate in all material respects." SPA § 4.11(a).

22.     In addition, Sellers represented and warranted to Plaintiff that "[a]ll material Taxes of [InterWrap and its subsidiaries, including IPP] that are due and payable with respect to any Pre-Closing Period" had been paid on or before the closing date or accrued and reflected on InterWrap's interim financial statements provided to Plaintiff. *Id.* § 4.11(b).

6

23.     Sellers further agreed, for a period of three years following the closing date, to indemnify and hold Plaintiff harmless from and against any and all losses arising out of, *inter alia*, any breach of the representations and warranties relating to Tax Matters under the SPA. *Id.* § 9.1(b), 9.3(a). Losses under the SPA include "any losses, liabilities, claims, damages, penalties, fines, judgments, awards, settlements, costs, fees and expenses (including reasonable attorneys' fees), but excluding punitive damages." *Id.* § 1.1.

### The SPA's Treatment of Duty Credit Scrips Issued Under the FPS

24.     The FPS was an incentive program established by the India Director General of Foreign Trade ("DGFT") to enhance India's export competitiveness by promoting the exportation of certain products, identified by a list of qualifying shipping codes. Exporters of qualifying products were eligible to receive tax credits in the form of Duty Credit Scrips issued to the exporting company. Such Duty Credit Scrips could be used by the exporting company to pay other customs duties or taxes, or could be sold for cash and transferred to a buyer on the secondary market. The FPS expired on March 31, 2015.

25.     Section 6.16 of the SPA, entitled "Tax Matters," specifically addresses the treatment of monies received by IPP in connection with the FPS. The SPA defines "IPP Scrip Credits Receivables" to mean "any receivables of IPP generated by the sales of scrip credits issued by the Republic of India." *Id.* § 1.1.

26.     Section 6.16(d) provides that "[a]ny Tax refunds" or amounts credited against pre-closing taxes, "including the collection of any IPP Scrip Credits Receivables," received by IPP after the closing shall be for the account of Sellers and paid over to Sellers within 15 days after receipt. The SPA thus defines all monies received from the sale of IPP Duty Credit Scrips as refunds of Taxes paid, to be remitted to Sellers to the extent that they relate to pre-closing tax periods.

**The DRI Audit of IPP Duty Credit Scrips and Demand for Payment**

27.	In or about May 2017, DRI notified IPP that DRI was auditing the company's previous availment of duty credits under the FPS with respect to the period encompassing fiscal years 2011-12 through 2014-15. Thereafter, DRI demanded that IPP provide it with contact information for current employees, all correspondence related to the amendment of shipping bills where the FPS reward was claimed, and copies of all FPS applications.

28.	By letter dated April 9, 2018, DRI advised IPP that, "as per inquiry so far," DRI had determined that IPP had wrongfully availed itself of benefits under the FPS during the above time period "to the tune of" 179,288,640 Indian rupees—about US$2.75 million at current exchange rates. DRI demanded immediate payment of the foregoing amount, with interest.

29.	In addition to its written demand for immediate payment, DRI took other actions to pressure IPP and its employees and obtain immediate satisfaction of its demand. Among other things, DRI officials made oral threats of arrest and prosecution to senior IPP employees; summoned such employees to appear in person at DRI inquiry proceedings; seized documents directly from IPP's corporate offices; and threatened to impose other sanctions including suspension of IPP's manufacturing operations.

30.	Faced with these sanctions, including potential serious disruption of its business, IPP agreed to make an initial payment, under protest, to DRI in the amount of 89,500,000 Indian rupees, or approximately US$1.38 million. As of the date of this Complaint, DRI's audit investigation is continuing, including pending additional discovery demands to IPP, and further action by DRI is anticipated by Owens Corning.

### Plaintiff's Investigation of Sellers' Breaches

31. Following the DRI demand, Owens Corning through its retained counsel conducted further investigation into the allegations of wrongful availment of FPS benefits by Sellers prior to closing. Such investigation revealed that, in 2014 and 2015, IPP sought and obtained from the Indian Commissioner of Customs retroactive amendments of approximately 1,400 shipping bills for previously exported IPP products reflecting shipping codes that were ineligible for Duty Credit Scrips under the FPS.

32. On information and belief, IPP or its agents submitted at least 18 letters to the Jawaharlal Nehru Custom House each seeking amendments to shipping codes listed on numerous shipping bills dating back to 2011. The letters seeking such amendments all sought such amendments on identical stated grounds, namely, that the original shipping code used on each bill was a "typographical error."

33. On information and belief, with Sellers' knowledge, IPP paid third-party consultants in 2014 and 2015 to submit and obtain irregular approvals of the retroactive amendments and issuances of scrip by Customs and DGFT officers. As a result of these retroactive amendments, IPP obtained millions of dollars' worth of Duty Credit Scrips in respect of product shipments relating to pre-closing periods from 2011 to 2015.

34. On information and belief, the April 9, 2018 demand for payment by DRI for wrongful availment of benefits under the FPS relates to Duty Credit Scrips obtained as a result of the retroactive amendments.

### Plaintiff's Notice of Claim to QRD

35. Upon first learning of the DRI audit, Owens Corning advised Sellers by letter dated May 11, 2017, concerning the pendency of the audit. Owens Corning provided Sellers with further written updates regarding the audit in December 2017 and March 2018.

36. After receiving DRI's formal written demand to IPP for payment in April 2018, Owens Corning promptly provided Sellers with written Notice of Claim, by letter to QRD dated April 19, 2018. As required under Section 1.3(a) of the Escrow Agreement, Owens Corning provided Sellers with details concerning the nature and basis of the claim.

37. In particular, Owens Corning advised QRD that the liabilities alleged by DRI would constitute a breach of Sellers' representations and warranties under Section 4.11 of the SPA. Owens Corning further advised that it was exercising its right under Section 9.6(c) of the SPA to conduct the defense of the claim by DRI, because an adverse determination with respect to DRI's allegations would be materially detrimental to the reputation of Owens Corning and IPP. Pursuant to Section 9.6(c), Sellers are obligated to pay all fees and expenses of counsel retained by Owens Corning to defend the claim. SPA §9.6(c).

38. Pursuant to the Escrow Agreement, Owens Corning also provided the Escrow Agent with a Claim Certificate and Notice (the "Certificate") by separate letter dated April 19, 2018. The Certificate advised the Escrow Agent that the potential loss to Owens Corning in connection with the DRI audit may equal or exceed the entire amount of the Escrow Funds, inasmuch as future proceedings by DRI and potentially by the DGFT or other Indian authorities could involve additional liabilities, penalties and other monetary sanctions, interest, and expenses subject to indemnification equal to or greater than US$17 million in the aggregate. Accordingly, Owens Corning's claim is for the entire amount of the Escrow Funds. Owens Corning further requested immediate reimbursement from the Special Escrow Account of any interim payments made to DRI pending final resolution of the DRI claim.

39. By letter dated May 2, 2018, QRD refused to acknowledge Sellers' obligation to indemnify and hold Owens Corning harmless for and against all liabilities arising from the DRI

claim. QRD also advised the Escrow Agent that Sellers objected to Owens Corning's Claim Notice and Certificate with respect to the DRI claim. As a result of QRD's action, no funds from the Special Escrow Account have been released to reimburse Owens Corning for its losses to date.

40. Despite Owens Corning's additional good-faith attempts to resolve this dispute with Sellers prior to commencing this action, no such resolution has occurred.

## COUNT ONE: DECLARATORY JUDGMENT

41. Plaintiff hereby repeats and incorporates by reference all of the preceding paragraphs as if fully set forth herein.

42. This is an action for declaratory relief pursuant to 28 U.S.C. § 2201 to declare the rights and legal relations of the parties. A declaratory judgment is appropriate because this case presents an actual and justiciable case or controversy, affecting the rights of the parties on both sides.

43. To the extent that Sellers' procurement of tax refunds in the form of Duty Credit Scrips is invalidated or reversed as a result of the DRI audit, Sellers are in breach of the representations and warranties concerning Tax Matters under Section 4.11 of the SPA.

44. As of the date of this Complaint, Defendant has failed to indemnify Plaintiff or agree to hold Plaintiff harmless for and against all losses arising from Defendant's breach of Section 4.11 of the SPA. As the DRI audit and investigation remain ongoing, additional losses related to Defendant's wrongful availment of FPS benefits may arise. To preserve its access to the Escrow Funds until such time as the full extent of such losses is finally determined, Plaintiff is entitled to an immediate declaration of its right to indemnification from the Escrow Funds for any and all such losses.

45. None of the exceptions listed in 20 U.S.C. § 2201 applies to this section.

46. Therefore, Plaintiff is entitled to a declaration stating that (a) Sellers must indemnify and hold Plaintiff harmless for and against any and all losses arising from Sellers' breach, including any and all liabilities incurred by Plaintiff in connection with Sellers' availment of FPS or other trade export incentive program benefits during pre-closing periods; (b) the Escrow Funds shall remain in the Special Escrow Account until such time as the full extent of such losses is finally determined; and (c) Owens Corning is entitled to an order directing the Escrow Agent to release funds in the Special Escrow Account to indemnify Owens Corning as the specific amounts of such losses become known.

## COUNT TWO: BREACH OF CONTRACT (SPA)

47. Plaintiff hereby repeats and incorporates by reference all of the preceding paragraphs as if fully set forth herein.

48. OCCH and Sellers, including Defendant QRD, entered into the Securities Purchase Agreement, a valid and binding written contract.

49. Plaintiff Owens Corning is the successor to all rights, titles, and interests of OCCH under the SPA, by operation of law.

50. Plaintiff has at all times fully performed its obligations under the SPA.

51. Defendant materially breached the representations and warranties set forth in Section 4.11 of the SPA and breached its obligations under the SPA by, among other things, failing to indemnify and hold Plaintiff harmless for and against any and all losses resulting from, or that may result from, Sellers' breach of Section 4.11.

52. By virtue of Defendant's material breach, Defendant has failed to satisfy, perform, or comply with its express obligations under the SPA.

53. As a direct and proximate result of Defendant's breach of the Securities Purchase Agreement, Plaintiff has suffered and incurred substantial damages in specific amounts to be proven at trial, including, but not limited to, costs incurred to remedy and mitigate Defendant's breach and pre- and post-judgment interest.

54. All conditions precedent to bringing this claim have been performed or otherwise executed.

## COUNT THREE: BREACH OF CONTRACT (ESCROW AGREEMENT)

55. Plaintiff hereby repeats and incorporates by reference all of the preceding paragraphs as if fully set forth herein.

56. OCCH and Defendant QRD entered into the Escrow Agreement, a valid and binding written contract.

57. Plaintiff Owens Corning is the successor to all rights, titles, and interests of OCCH under the Escrow Agreement, by operation of law.

58. Plaintiff has at all times fully performed its obligations under the Escrow Agreement.

59. Defendant materially breached its obligations under the Escrow Agreement by, among other things, failing to authorize the release of funds from the Special Escrow Account to indemnify and hold Plaintiff harmless for and against any and all losses resulting from, or that may result from, Defendant's breach of Section 4.11 of the SPA.

60. By virtue of Defendant's material breach, Defendant has failed to satisfy, perform, or comply with its express obligations under the Escrow Agreement.

61. As a direct and proximate result of Defendant's breach of the Escrow Agreement, Plaintiff has suffered and incurred substantial damages in specific amounts to be proven at trial,

including, but not limited to, costs incurred to remedy and mitigate Defendant's breach and pre- and post-judgment interest.

62.     All conditions precedent to bringing this claim have been performed or otherwise executed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant the following relief:

- A declaration that (a) Sellers must indemnify and hold Plaintiff harmless for and against any and all losses arising from Sellers' breach, including any and all liabilities incurred by Plaintiff in connection with Sellers' availment of FPS or other trade export incentive program benefits during the pre-closing period; (b) the Escrow Funds shall remain in the Special Escrow Account until such time as the full extent of such losses is finally determined; and (c) Owens Corning is entitled to an order directing the Escrow Agent to release funds in the Special Escrow Account to indemnify Owens Corning as the specific amounts of such losses become known.
- Actual damages;
- Exemplary damages;
- Pre-judgment and post-judgment interest;
- Reasonable attorney's fees and expenses, as provided under Section 9.6(c) of the SPA, including all costs and disbursements of this action;

- All other and further relief that this Court deems just and proper.

                                **COVINGTON & BURLING LLP**

                        By:  s/ P. Benjamin Duke
                              P. Benjamin Duke
                              620 Eighth Avenue
                              New York, NY 10018-1405
                              Tel: (212) 841-1000
                              Email: pbduke@cov.com

                              *Attorneys for Plaintiff Owens Corning*
                                  *Canada Holdings ULC*